UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA GOETTEL,

                          Plaintiff,

v.                                                  1:18-CV-1285 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | JUSTIN JONES, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ANDREEA LECHLEITNER, ESQ.<br>ANGELA THORNTON-MILLARD, ESQ.<br>FRANCIS TANKARD, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 16.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

A. Factual Background

Plaintiff was born in 1954. (T. 175.) She completed high school. (T. 282.) Generally, Plaintiff's alleged disability consists of diabetes, neuropathy, depression, high blood pressure, and high cholesterol. (T. 281.) Her alleged disability onset date is September 5, 2014. (T. 175.) Her date last insured is December 31, 2018. (*Id.*) Plaintiff's past relevant work consists of administrative clerk. (T. 99.)

B. Procedural History

On November 19, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 175.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 14, 2017, Plaintiff appeared before the ALJ, Sharon Seeley. (T. 105-164.) On December 21, 2017, ALJ Seeley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 88-104.) On September 24, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 93-100.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since September 5, 2014. (T. 93.) Second, the ALJ found Plaintiff had the severe impairments of: type 2 diabetes mellitus and diabetic neuropathy. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals

one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 96.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] can perform work that would allow her to alternate after 30 minutes standing to sitting five minutes and after one hour sitting to standing five minutes, while remaining on task. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but never climb ladders, ropes or scaffolds. She can occasionally reach overhead with the bilateral upper extremities with no limitation on reaching in other directions. Finally, she can work in an environment with no exposure to hazards such as unprotected heights or moving machinery.

(T. 96.)[1] Fifth, the ALJ determined Plaintiff could perform her past relevant work. (T. 99.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to reconcile her RFC determination with the opinion of consultative examiner, Janine Ippolito, Psy.D. (Dkt No. 9 at 10-14.) Second, and lastly, Plaintiff argues the ALJ improperly evaluated the opinions of Plaintiff's treating physician's assistant, Gretchen Murray. (*Id*. at 14-18.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 15.)

### B. Defendant's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

3

In response, Defendant makes two arguments. First, Defendant argues substantial evidence supported the ALJ's evaluation of Ms. Murray's opinions. (Dkt. No. 14 at 11-14.) Second, Defendant argues substantial evidence supported the ALJ's RFC determination. (*Id*. at 14-16.) Third, and lastly, Defendant argues substantial evidence supported the finding Plaintiff can return to her past relevant work. (*Id*. at 16-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Physician Assistant Gretchen Murphy

Plaintiff argues the ALJ failed to properly evaluate the two opinions of PA Murphy because the ALJ did not assign weight with "particularity to either opinion" and she failed to apply the regulations. (Dkt. No. 9 at 14-18.) For the reasons outlined below, the ALJ properly assessed the opinions provided by Ms. Murphy.

Physicians' assistants are listed among the "other medical sources," whose opinions may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 404.1513(d)(1)[2]. "[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008)

On January 5, 2015, Ms. Murphy completed a form titled "Medical Source Statement - Physical." (T. 381-383.) Ms. Murphy completed an identical form on April 7, 2017. (T. 376-378.) In 2015 and 2017, Ms. Murphy opined Plaintiff could stand/walk for two hours in an eight-hour workday and sit for four hours in an eight-hour workday.

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

(T. 377, 382.) In 2015, Ms. Murphy indicated Plaintiff could rarely lift less than ten pounds and could never lift ten pounds or more. (T. 382.) In 2017, Ms. Murphy indicated Plaintiff could rarely lift less than ten pounds, could rarely lift ten pounds, and could never lift 20 pounds or more. (T. 377.) In 2015 and 2017, Ms. Murphy indicated Plaintiff could rarely twist and never stoop, crouch/squat, or climb ladders. (T. 377, 382.) In 2015, she indicated Plaintiff could never climb stairs, and in 2017 she indicated Plaintiff could rarely climb stairs. (T. 377, 382.) In 2015, she indicated Plaintiff had significant limitations with reaching, handling, or fingering. (T. 382.) In 2017, she indicated Plaintiff had no limitations in reaching, handling, or fingering. (T. 377.)

In 2015 and 2017, Ms. Murphy indicated Plaintiff suffered from depression. (T. 378, 383.) In 2015, she indicated Plaintiff's "pain or other symptoms" would frequently interfere with her attention and concentration to perform simple work tasks. (T. 383.) In 2017, she indicated "pain or other symptoms" would occasionally interfere with her attention and concentration to perform simple work tasks. (T. 378.) In 2015, she opined Plaintiff was incapable of even low stress jobs, in 2017 she opined Plaintiff was capable of low stress jobs. (T. 378, 383.) On her 2017 form, Ms. Murphy indicated that the earliest date that the symptoms and limitations provided in that form applied was March 2014. (T. 378.)

Plaintiff's assertion, that the ALJ committed legal error in failing to afford Ms. Murphy's opinions an "exact amount of weight," fails. (Dkt. No. 9 at 15.) An ALJ's failure to explicitly afford an opinion weight does not constitute error if the ALJ's weight determination can be inferred from the decision. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can infer

from the decision that she attributed "great weight" to the opinion because she found it most consistent with the record as a whole."). Here, the ALJ's weight determination can be easily inferred from her decision. The ALJ assessed Ms. Murphy's opinions and stated "the undersigned does not give great weight" to the opinions. (T. 98.) The ALJ went on to assess the medical opinion of the consultative examiner, Hongbiao Liu, M.D. and stated she afforded "greater weight" to his opinion. (*Id*.) Therefore, it is clear from the ALJ's decision she afforded more weight to Dr. Liu's opinion than Ms. Murphy's opinions.

Further, contrary to Plaintiff's assertion, the ALJ properly evaluated Ms. Murphy's opinions. (Dkt. No. 9 at 16-18.) Where an ALJ's reasoning and adherence to the regulations is clear, she is not required to explicitly go through each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

The ALJ acknowledged Ms. Murphy as Plaintiff's "primary care physician's assistant." (T. 98); 20 C.F.R. § 404.1527(c)(1)-(2). However, the ALJ found her opinion were not consistent with the record as a whole. (T. 98); 20 C.F.R. § 404.1527(c)(4). Specifically, the ALJ noted Ms. Murphy's statement, that Plaintiff's symptoms would interfere with her concentration and attention to perform work, was inconsistent with the fact Plaintiff continued to seek work and certify that she was ready, willing, and able to work. (T. 98, 118-120.) The ALJ also found Ms. Murphy's opinions inconsistent with each other. (T. 98.)

8

The ALJ stated "most importantly" Ms. Murphy's opinions were not consistent with the treatment records which reported consistently unremarkable examinations. (T. 98); 20 C.F.R. § 404.1527(c)(4). Specifically, the ALJ noted the only time treatment records documented reports of Plaintiff's symptoms or limitations was when Plaintiff presented to Ms. Murphy in January 2015 for the purpose of completing "disability paperwork." (T. 98, 331); *see Johnson v. Comm'r of Soc. Sec.,* 669 F. App'x 580 (2d Cir. 2016) (ALJ found medical opinion was internally inconsistent and the source relied primarily on plaintiff's self-reported symptoms).

The ALJ afforded more weight to the medical opinion of Dr. Liu, who stated Plaintiff had mild to moderate limitations for prolonged walking, bending, kneeling, and overhead reaching. (T. 98, 370); *see Genier*, 298 F. App'x at 108-109 ("the ALJ was free to discount the assessments accordingly in favor of the objective findings of other medical doctors"). Therefore, the ALJ properly assessed Ms. Murphy's opinions under the regulations and substantial evidence in the record supported her weight determination. *See Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (ALJ properly afforded treating source opinion only probative weight where limitations were inconsistent with the source's treatment notes, the conclusions of other medical sources, and plaintiff's testimony of her daily functioning).

### B. Non-severe Impairments and Step Four

Plaintiff argues the ALJ failed to reconcile Dr. Ippolito's opinion with her RFC determination. (Dkt. No. 9 at 10-14.) Plaintiff asserts, despite finding Plaintiff's mental

9

impairments non-severe, the ALJ afforded Dr. Ippolito's opinion significant weight and the RFC failed to contain any mental limitations. (*Id*.)[3]

It is well settled that an ALJ must consider both severe and non-severe impairments when making an RFC determination. *See Parker-Grose v. Astrue*, 462 F. App'x. 16 (2d Cir. 2012); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' ... when we assess your [RFC]....").

At step two the ALJ provided a thorough analysis to support her determination that Plaintiff's mental impairments were non-severe. (T. 95-96.) In making her "paragraph B" determination, the ALJ determined Plaintiff had "no more than mild" limitations in the functional areas of: understanding, remembering, or applying information; interacting with others; concentrating persisting, or maintaining pace; and adapting or managing herself. (T. 95.)[4]

In making her determination, the ALJ relied on objective examinations in the record. (T. 95.) During her consultative exam, Plaintiff displayed mildly impaired attention, concentration, and memory. (T. 95, 364.) However, at other exams Plaintiff's memory and judgement were observed to be intact. (T. 337, 342, 426, 435.) Plaintiff was observed to have normal thought process, normal affect, neutral mood, good insight, and good judgment. (T. 95, 364.) Plaintiff was observed to be cooperative with good social skills and overall presentation. (T. 95, 363.) In making her step two

---

[3] Plaintiff does not assert what specific limitation or limitations in Dr. Ippolito's opinion the ALJ failed to consider; however, Plaintiff does make a reference to "mental limitations . . . some of them were stress limitations." (Dkt. No. 9 at 14.)

[4] The psychiatric review technique described in 20 C.F.R. § 404.1520a requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.

determination, the ALJ also relied on the medical opinion evidence provided by consultative examiner, Dr. Ippolito and non-examining State agency medical examiner, H. Tzetzo, M.D. (*Id*.)

Dr. Ippolito performed a psychiatric examination and provided a medical source statement. (T. 362-366.) Dr. Ippolito opined Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others. (T. 365.) She opined Plaintiff "can maintain attention and concertation with mild limitations" and those limitations were "due to [Plaintiff's] current emotional distress and fatigue." (*Id*.) Dr. Ippolito stated the results of the evaluations were "consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (*Id*.)

On May 7, 2015, Dr. Tzetzo reviewed Plaintiff's record, including Dr. Ippolito's examination and medical source statement. (T. 169-170.) Dr. Tzetzo opined Plaintiff "should be able to handle normal work pressures" and concluded Plaintiff's "alleged psychiatric impairment is rated as not severe." (T. 170.)

The record does not contain any mental health treatment from a primary source other than medication. Plaintiff received medication to treat her depression from her primary care provider beginning in 2014. (T. 337.) Plaintiff informed Dr. Ippolito she was not currently receiving outpatient mental health treatment. (T. 362.)

In her step two analysis, the ALJ afforded "substantial weight" to Dr. Ippolito's opinion reasoning it was "consistent with the record as a whole." (T. 95.) The ALJ

afforded Dr. Tzetzo's opinion "less weight" reasoning the doctor did not personally examine Plaintiff, however, the ALJ noted the opinion supported her "paragraph B" assessment. (*Id*.) Because Plaintiff's mental impairments caused "no more than 'mild' limitations in any of the functional areas," the ALJ concluded the impairments were non-severe. (T. 96.) At the conclusion of her step two analysis, the ALJ stated her RFC assessment reflected the "degree of limitation [. . .] found in the 'paragraph B' mental function analysis." (*Id*.)

Plaintiff concedes the ALJ did not err in her step two determination finding her mental impairments non-severe. (Dkt. No. 9 at 10-14, Dkt. No. 15 at 2.) An impairment is not severe if the medical evidence establishes "only a slight abnormality" which would have "no more than a minimal effect" on a plaintiff's ability to perform basic work activities. SSR 85-28, 1985 WL 56856, *3; 20 C.F.R. § 404.1521(a)("An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities."); *see Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987). Basic mental work activities include: understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6). Therefore, Plaintiff concedes her mental impairments do not significantly limit her ability to perform the basic mental demands of work. *Sherman v. Comm'r of Soc. Sec.*, No. 7:14-CV-0154, 2015 WL 5838454, at *4 (N.D.N.Y. Oct. 7, 2015) (plaintiff failed to challenge ALJ's step two finding impairments were non-severe; therefore, plaintiff acknowledged the impairments constituted slight abnormalities having no more than a minimal effect on her ability to work); *see also*

*Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("The ALJ's finding that Cichocki's bipolar disorder did not cause more than "minimal limitation in the claimant's ability to perform basic mental work activities" further undermines the suggestions that the ALJ failed to consider this condition in concluding Cichocki did not suffer from multiple impairments that rendered her disabled or that consideration of her bipolar disorder should lead to a different Step Four conclusion.").

Plaintiff's argument, that the ALJ failed to consider her non-severe impairments at step four, is undermined by the ALJ's decision. In her step four analysis, the ALJ stated her RFC determination was based on all the evidence "with consideration of the limitations and restrictions imposed by the combined effects of all of [Plaintiff's] medically determinable impairments." (T. 96.) The ALJ then explicitly considered evidence in the record pertaining to Plaintiff's mental impairments. (T. 98.) The ALJ again noted the opinions of Dr. Ippolito and Tzetzo, and the weight afforded to them. (*Id*.) The ALJ referred to her step two analysis of the opinions, and indicated that she relied on the doctors' opinions Plaintiff's mental impairments were essentially non-severe and therefore did not impact Plaintiff's ability to perform the basic mental demands of work. (*Id*.) Lastly, the ALJ noted Plaintiff's allegations of debilitating limitations were not supported by mental status examinations which "generally indicated benign findings" and Plaintiff's activities of daily living. (T. 99.) Therefore, contrary to Plaintiff's assertion, the ALJ properly considered Plaintiff's non-severe mental impairments in her step four analysis.

In addition, Dr. Ippolito's medical source statement supported the ALJ's RFC determination and ultimate step four conclusion Plaintiff could perform the mental

demands of her past relevant work, administrative clerk. Despite limitations due to her current "distress and fatigue," Dr. Ippolito opined Plaintiff could perform simple and complex tasks independently, maintain a regular schedule, make appropriate decisions, and relate adequately with others. (T. 365.) The doctor's opinion is consistent with the mental demands of administrative clerk, DOT 219.362-010, which has a specific vocational preparation ("SVP") of 4 which corresponds to "semi-skilled" work. (T. 99, 158-159); SSR 00-4p, 2000 WL 1898704, at *3 (semi-skilled work corresponds to an SVP of 3-4).

Overall, the ALJ did not fail to "reconcile" the consultative medical examiners' opinions with her RFC. The ALJ found Plaintiff's mental impairments non-severe at step two and therefore did not limit Plaintiff's ability to perform basic demands of work. At step two, the ALJ properly assessed Dr. Ippolito's opinion, noting the doctor's conclusion that Plaintiff's "psychiatric problems" were "not significant enough to interfere with her ability to function on a daily basis." (T. 95.) The ALJ also properly relied on Dr. Tzetzo's opinion that Plaintiff's mental impairments were non-severe. (*Id.*) Plaintiff concedes the ALJ did not err in her analysis at step two, therefore Plaintiff accepts the ALJ's finding that the medical opinion evidence supported the determination that Plaintiff's mental impairments were non-severe and did not have more than a minimal limitation on her ability to perform the basic demands of work. Further, the ALJ specifically considered the medical evidence pertaining to Plaintiff's mental impairments at step four and determined no additional mental limitations were warranted. Therefore, the ALJ properly considered evidence regarding Plaintiff's mental impairments at steps two and four.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

    **ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      November 14, 2019

                                                        William B. Mitchell Carter
                                                        U.S. Magistrate Judge